IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**RANDALL B. CAUSEY**                                                    **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO.  3:18CV181 CWR-LRA**

**A.W. CARLTON, et al.**                                           **DEFENDANTS**

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Randall Causey ["Plaintiff" or "Causey"] files the instant action pursuant to

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388

(1971) against Federal Bureau of Prison ("BOP") employees and the United States of

America alleging constitutional and Federal Torts Claims Act violations during his

previous confinement at the Federal Correctional Complex ("FCC-Yazoo") in Yazoo

City, Mississippi.[1]  The crux of Causey's Complaint concerns the alleged actions or

inactions of the various named Defendants related to his medical care before, on and after

July 19, 2016.[2]  This matter is currently before the Court on the Motions to Dismiss [66,

68, 72, & 74] filed by the BOP prison guards.  Defendants A.W. Carlton, SIS Dean, S.

Cartwright, and C. Franklin all move to dismiss Causey's claims pursuant to Fed. R. Civ.

P. 12(b)(1), for lack of subject matter jurisdiction, and pursuant to Fed. R. Civ. P.

12(b)(6), for failure to state a claim upon which relief may be granted, or alternatively for

---

[1]  Plaintiff has been released from prison and from a halfway house. His scheduled release date was January 23, 2020.

[2] Causey has filed two amended complaints on May 11, 2018, and July 2, 2019.  There appear to be no new allegations raised against the individual Defendants in the second amended complaint.  ECF Nos.  9, 65.

summary judgment.  In support, Defendants have attached four exhibits, including the

October 29, 2018, Declaration of Alvin Fortenberry, and three others with records

regarding Plaintiff's administrative remedies.  Having considered the submissions of the

parties and the applicable law, the undersigned makes the following recommendations.

### Factual Background

Liberally construed, Plaintiff's allegations as set forth in his pleadings are as

follows:  On July 19, 2016, BOP Defendant Nurse Scott activated her body alarm after

claiming that Plaintiff became verbally aggressive and combative when she tried to take

his vitals.  In response to the alarm, Plaintiff was escorted to a holding cell by two

officers without seeing a physician.  According to Plaintiff, the officers were clearly

aware of his weakened condition because they provided a stool for him.  Hours later,

after his condition had visibly worsened, Plaintiff was seen by Defendant Dr. Chambers,

a BOP physician.  Plaintiff charges that Dr. Chambers initially refused to treat him until

he apologized to Nurse Scott.  After he did examine Plaintiff, Dr. Chambers diagnosed

him with a brain tumor on his optic nerve and food poisoning.

Sometime thereafter, Plaintiff was returned to a cell and given an allegedly "false"

incident report for threatening a staff member.  Plaintiff denied the allegations and

asserted that surveillance video of the incident would show he was too sick to have

committed the claims made by Nurse Scott.  Plaintiff asserts that Defendants told him

that there was no such video, but then they later cited it as evidence to support Plaintiff's

disciplinary conviction.  Defendants also allegedly forged his signature on the incident

report to make it appear that Plaintiff had waived his right to call witnesses at his disciplinary hearing.

On August 4, 2016, Plaintiff was found guilty of violating Disciplinary Code 299, (Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution), and Disciplinary Code 203, (Threatening Another with Bodily Harm).  He was sanctioned with the loss of 27 days of good-conduct time, 90 days commissary restriction, and 51 days of solitary confinement in the Special Housing Unit ("SHU"). While housed in the SHU, Plaintiff "continued to suffer migraine headaches, severe energy loss, loss of appetite, blurred vision, and fever."  He was also subjected to limited access to health care providers, unsanitary conditions, and bright lights which aggravated his condition.  According to Plaintiff, Defendants knew about the conditions but forced him to remain in the SHU.

On August 8, 2016, Plaintiff filed an "emergency" administrative grievance ("ARP") BP-8 form requesting a medical transfer in hopes of having the tumor removed. Plaintiff charges that the request was unduly delayed by Defendants, resulting "in permanent medical damage to the Plaintiff's medical state."

Plaintiff was released from the SHU on September 9, 2016.  On December 30, 2016, he underwent surgery to remove the brain tumor.  He was released from ICU on January 4, 2017, with post-operative instructions; BOP medical staff failed to follow these instructions, according to Plaintiff.

On January 28, 2017, while still recovering from surgery, Plaintiff contends that he was falsely accused of committing a second disciplinary infraction.  He was placed in

the SHU for 20 days without an investigation or medical care despite "informing multiple

staff of his recent brain surgery."  While in the SHU, he was subjected to unsanitary

conditions; he was unable to clean his cell because of his weakened medical condition

and because unnamed defendants denied him cleaning supplies.  Although he was

ultimately acquitted of the second disciplinary infraction, Plaintiff claims that he received

no medical care despite numerous requests.  He "continues to have permanent brain

damage due to undue delay in medical care and lack of follow up care" by BOP medical

staff, including "migraine headaches, nosebleeds, cold sweats, and sometimes confusion

and feelings of being lost."[3]

Plaintiff seeks monetary damages against BOP Defendants Carlton, SIS Dean, Lt.

Cartwright, and Sgt. Franklin for violating his Fifth and Eighth Amendment

constitutional rights for "falsely" placing him in the SHU and interfering with his serious

medical needs.  In his prayer for relief, Plaintiff requests this Court to enter a judgment in

his favor; award monetary damages in an amount to be determined by a jury; and, grant

any other relief the Court deems proper.  Defendants Carlton, SIS Dean, Lt. Cartwright,

and Sgt. Franklin (all guards at the prison) move to dismiss the claims against them for

lack of subject-matter jurisdiction and for failure to state a claim.  Defendants assert that

the Complaint does not allege sufficient facts to show their personal involvement in any

alleged constitutional violation to overcome a qualified immunity defense.  According to

these Defendants, the allegations, accepted as true, are either unexhausted; do not

---

[3] ECF Nos. 9, 65.

constitute a violation of the Eighth Amendment; or, are barred by *Heck v. Humphrey*, 512

U.S. 477 (1994) and its progeny.

## Standard of Review

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R.

Civ. P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate

the claim. *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

A Rule 12(b)(6) motion to dismiss an action for failure to state a claim "admits the facts

alleged in the complaint, but challenges plaintiff's rights to relief based upon those

facts." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1137 (5th Cir.1992).

"To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is

plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Lott v. Edenfield*, 542 F. App'x. 311, 314 (5th Cir. 2013)

(internal citations and quotations marks omitted).  If, on a motion under Rule 12(b)(6),

matters outside the pleadings are presented to and not excluded by the court, the motion

must be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).

## Discussion

In *Bivens,* the United States Supreme Court recognized a cause of action for

monetary relief for constitutional violations by federal officials as the counterpart for

actions brought against state officials pursuant to §1983.  *Bivens,* 403 U.S. at 389–98.  In

the decades since however, "the Court has made clear that expanding the *Bivens* remedy

is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1865–69

(2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, (2009)).  While it has been applied

to Eighth Amendment claims for deliberate indifference to serious medical needs, it has

never been extended to due process violations arising from disciplinary convictions as

asserted herein. *Carlson v. Green*, 446 U.S. 14, 19 (1980).

Before proceeding, the Fifth Circuit instructs districts courts to first consider

whether a *Bivens* claim represents a new context, and if so, whether there are any existing

remedial processes for addressing the alleged harm or special factors counseling

hesitation.  *Rroku v. Cole*, 726 F. App'x. 201, 205 (5th Cir. 2018) (citing *Butts v. Martin*,

877 F.3d 571, 587 (5th Cir. 2017)).  "[I]f there is an alternative remedial structure present

in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens*

cause of action." *Abbasi*, 137 S. Ct. at 1858.  As the record reflects here, Causey has

already availed himself of one alternative by seeking relief through the Bureau of

Prisons' Administrative Remedy Program, which permits "inmate[s] to seek formal

review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. §

542.10(a). *See Brunson v. Nichols*, No. 1:14CV2467, 2018 WL 7286410, at *3 (W.D.

La., Dec. 7, 2018) (collecting cases).  That his administrative complaints were ultimately

denied does not mean that the program was not an alternative or meaningful remedial

structure, nor does it automatically entitle him to monetary damages under *Bivens*. *Vega

v. United States*, 881 F.3d 1146, 1155 (9th Cir. 2018).  Causey can also avail himself of

28 U.S.C. §2241, which provides a means for a federal prisoner to challenge disciplinary

rulings resulting in the loss of good-time credits.

Because these administrative and statutory remedies provide alternative methods for judicial relief, the Court should decline to extend a *Bivens* remedy to Causey's due process claims here. Even if there were no such remedies, Plaintiff's due process claims are barred for the reasons that follow.

### 1.  *Heck v. Humphrey*

When a prisoner faces a loss of a protected liberty interest through a disciplinary hearing, he is entitled to the due process protection established in *Wolf v. McDonnell*, 418 U.S. 539, 556 (1974). However, "[t]o establish a due process violation, a prisoner must show that he was deprived of a liberty interest protected by the Constitution or other law. Not every punishment for prison misconduct implicates a protected liberty interest. . . . Nor do the temporary loss of commissary and visitation privileges support a due process claim." *Jacques v. Bureau of Prisons*, 632 Fed. Appx. 225 (5th Cir. 2016) (internal citations and quotations omitted).

In any event, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Heck*, 512 U.S. at 486–87; *Stephenson v. Reno*, 28 F.3d 26, 28 (5th Cir. 1994) (per curiam) (applying *Heck* in *Bivens* context). *See Deen-Mitchell v. Young*, 490 F. App'x 650, 650–51 (5th Cir. 2012) (per curiam) (assuming "arguendo that federal prisoners have a liberty interest in their good-time credits"). Although Plaintiff asserts that he was acquitted of the second disciplinary infraction, his disciplinary conviction for the incident with Nurse Scott has not been

reversed on direct appeal, expunged by executive order, or called into question by a

federal court's issuance of a writ of habeas corpus.  A monetary judgment in favor of

Plaintiff would necessarily implicate and call into question the validity of his disciplinary

conviction and the sanctions imposed.  Accordingly, his disciplinary hearing claims are

barred by *Heck* and should be dismissed for failure to state a claim.

Moreover, Causey, who has now been released from custody, cannot recover

good-time credits in a *Bivens* action.  *Brown v. Vasquez*, 699 F. App'x 335 (5th Cir.

2017) (citing *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998)).  Rather, "the return of

his good-time credits" is "cognizable only in a habeas corpus action, not in a *Bivens*

action." *Muhammad v. Weston,* 126 F. App'x 646, 648 (5th Cir. 2005) (per curiam).

### 2.  *Official Capacity Claims*

Assuming arguendo a *Bivens* remedy extends to Plaintiff's Eighth Amendment

claims in this case, the purpose of a *Bivens* action "is to deter individual federal officers

from committing constitutional violations." *Correctional Services Corp. v. Malesko*, 534

U.S. 61, 70 (2001).  Accordingly, it may only be maintained against a defendant in his or

her individual capacity.  *Id.*  To the extent Plaintiff is attempting to assert a *Bivens* claim

against any of the BOP defendants in their official capacities, the Court should dismiss

the claims for lack of subject matter jurisdiction.  *Gibson v. Fed. Bureau of Prisons*, 121

F. App'x. 549, 551 (5th Cir. 2004) (affirming dismissal of *Bivens* claims against the BOP

and BOP officers in their official capacities).

### 3. *Individual Capacity Claims*

Although *Bivens* claims may proceed against officers in their individual capacities, a governmental official "is only liable for his or her own misconduct."  *Ashcroft v. Iqpal*, 556 U.S. 662, 677 (2009).  Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior.  A plaintiff must plead that each government-official defendant, through the official's own individual actions, violated his constitutional rights by (1) "personal involvement in the acts causing the deprivation of a person's constitutional rights" or by (2) implementing "a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).

### 4. *Qualified Immunity*

The sufficiency of a plaintiff's allegations in a *Bivens* action is also "inextricably intertwined with" and "directly implicated by" an official's qualified immunity.  *Iqbal,* 556 U.S. at 673.  "A federal official is entitled to qualified immunity unless the allegations in the complaint establish a violation of a constitutional right that was clearly established at the time of the alleged misconduct."  *Edenfield*, 542 F. App'x. 311, 314–15 (citation omitted).  Once the qualified immunity defense is raised, the burden shifts to the plaintiff, who "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."  *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

The BOP Defendants do not contest that a prison official's deliberate indifference

to a serious medical need is a violation of clearly established law, but they maintain that

Plaintiff fails to allege sufficient facts to show their personal involvement in an Eighth

Amendment or any other constitutional violation to overcome a qualified immunity

defense.  The undersigned agrees and addresses the individual capacity claims against

each BOP Defendant in turn.

### Defendant SIS Dean (Count Two)

Plaintiff identifies Defendant Dean as one of the correctional officers who

escorted him to the holding cell after Nurse Scott sounded the alarm; Dean was aware of

his weakened condition.  Aside from this, the only allegations Plaintiff states against

Dean with any particularity center around Plaintiff's disciplinary hearing in August 2016.

In ground two of his Complaint, he alleges that Defendant Dean "stated that there was no

camera footage" of the incident with Nurse Scott; yet, Dean submitted a report to the

disciplinary hearing officer to the contrary which was used to find Plaintiff guilty, "all

without providing Plaintiff an administrative representative as requested in violation of

*Wolff v. McDonnel . . .*." [4]

Because Plaintiff was convicted of violating prison policies and sanctioned with

loss of good-conduct time credits as a result of the incident with Nurse Scott, the

undersigned submits that his claims against Dean are *Heck*-barred.  However, even if

---

[4]  ECF No. 65, p. 10.  Plaintiff does not raise any allegations against Defendant Dean
with respect to his second disciplinary infraction.

Plaintiff's allegations against Defendant Dean were not *Heck*-barred, there is no basis to

support a due process claim against Dean in his individual capacity to overcome a

qualified immunity defense.  It is not a violation of an inmate's due process rights to be

denied the opportunity to view a surveillance video in a prison disciplinary proceeding.

*Arceneaux v. Pearson,* 449 F. App'x 396, 398 (5th Cir. 2011); *see also Neal v. Casterline,*

129 F. App'x. 113, 114 (5th Cir. 2005) (holding that the DHO's failure to observe a

surveillance video did not violate inmate's due process rights).[5]  Inmates facing

disciplinary charges are not entitled to the full panoply of rights afforded to defendants in

criminal prosecutions. *Wolff,* 418 U.S. at 556.

Plaintiff's argument is also unavailing.  He essentially asserts that the video was

exculpatory, but the record reflects that Dean's report to the disciplinary hearing officer

indicated that "there is no video footage *supporting inmate Causey's allegation of the*

*incident*."  Similarly unavailing is Plaintiff's contention that he is actually innocent of

the charged violations.  Due process is satisfied if there is "at least 'some basis in fact' or

a 'modicum of evidence' to support the disciplinary conviction.'"  *Superintendent,*

---

[5] Further, the Supreme Court has held that while an inmate "should be allowed to call witnesses and present documentary evidence in his defense," he should not be permitted to do so when it would be unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 566.  Although the government in this case has not asserted that producing the videotape would be unduly hazardous to institutional safety or correctional goals, courts applying this language from *Wolff*, have rejected due process claims for this reason.  *See Howard v. Werlinger*, 403 F. App'x 776, 777 (3rd Cir. 2010) ("The BOP does not allow inmates to view surveillance video for security reasons. As noted above, due process does not require that an inmate be allowed to confront the evidence against him. Thus, Howard was not entitled to view the video footage of the incident.").

*Massachusetts Corr. Inst. v. Hill,* 472 U.S. 445, 454–56, (1985).  There is some evidence

in the record to support the disciplinary conviction, including the incident report.[6]

**Defendant A.W. Carlton (Counts One and Four)**

Defendant Carlton is identified as the other correctional officer who escorted

Plaintiff to the holding cell after Nurse Scott triggered the alarm, and he was also "clearly

aware of Plaintiff's "obvious weakened condition."  Other than this contention, the only

allegations against Defendant Carlton that Plaintiff states with any particularity relate to

Carlton being "the person responsible for answering requests for administrative remedies

at the institutional level."  In Ground One, he alleges that Carlton violated his due process

by failing to "handle his administrative grievances pertaining to his brain tumor" in a

proper and timely manner; and, in Ground 4, he alleges that Carlton was deliberately

indifferent to his medical needs by "mishandling his administrative grievances causing

undue prolonged delay of [a] resolution that resulted in permanent medical damage."

Causey does not explain precisely how Carlton mishandled his administrative

grievances, except for asserting that Carton was responsible for answering administrative

grievances at the institutional level.  Such "threadbare assertions fall short of the sort of

well-pleaded facts that would allow us to draw the reasonable inference that" Carlton is

liable for the claims asserted.  *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019).

---

[6] Although Plaintiff asserts that Defendants forged his signature on the incident report to make it appear that he had waived his right to call witnesses at his disciplinary hearing, he has not provided any information to reflect the nature of the testimony that the witnesses he was not allowed to call would have presented.  The administrative record reflects that Plaintiff did not request a staff representative. ECF No. 31-4, pp. 9, 17.

Defendants contend that the allegations against Carlton are also unexhausted, as

neither of Causey's administrative grievances[7] explicitly allege due process and Eighth

Amendment complaints against Carlton.  In support, Defendants point out that in his

administrative grievances, Plaintiff alleged that Defendant Smith, not Carlton, violated

his due process rights by failing to expedite and/or process his BP-8 and BP-9 forms

before she retired, resulting in undue delay.[8]  Setting this argument aside, even if the

Court were to find that Plaintiff's administrative grievances sufficiently alerted BOP staff

that his request for a medical transfer was being "mishandled," the grievances are devoid

of any reference to a complaint against Defendant Carlton that would support a claim

against him in his individual capacity.  "A supervisor is not personally liable for his

subordinate's actions in which he had no involvement." *James v. Texas Collin Cty.*, 535

F.3d 365, 373 (5th Cir. 2008).  Without personal involvement or participation in an

---

[7] BOP's administrative records reflect that Plaintiff exhausted two Administrative Remedy Claims before filing the instant suit.  Administrative Remedy 873799, filed on August 8, 2016, relates to Plaintiff's request for a medical transfer because the prison's medical staff were not caring appropriately for his medical conditions.  Relatedly, it also challenges the timeliness and lack of response from prison and medical officials to his administrative requests.  Administrative Remedy 878265, appeals Plaintiff's disciplinary conviction of August 4, 2016, for Threatening Bodily Harm disciplinary hearing and decision imposed by Disciplinary Hearing Officer arising from Nurse Scott's incident report and challenges the underlying basis for his placement in the SHU.  As relief, Plaintiff requested that his record be expunged.

[8] It is well-settled that a "grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).  However, the "primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id. Patterson v. Stanley*, 547 F. App'x. 510, 511 (5th Cir. 2013).  Although Defendants assert that Plaintiff makes no reference to Carlton in his administrative grievances, they acknowledge in their memorandum brief Plaintiff's assertion in ARP 873199 that "Unit Manager" Carlton "assisted with moving Plaintiff's grievance through the process by giving him permission to escalate his appeal." ECF No. 32, p. 21.

alleged constitutional violation, there is no viable *Bivens*' claim against Defendant

Carlton.

Drawing all reasonable inferences in favor of Plaintiff, he has also failed to allege

sufficient facts to overcome Defendant Carlton's qualified immunity defense.  It is

clearly established that deliberate indifference to a serious medical need "may be

manifested by prison doctors in their response to the prisoner's needs or by prison guards

in intentionally denying or delaying access to medical care or intentionally interfering

with the treatment once prescribed."  *Estelle v. Gamble*, 429 U.S. at 104–05 (1976).  To

overcome a qualified immunity defense on a deliberate indifference claim, a plaintiff

must show that the prison official knew the inmate faced a substantial risk of bodily harm

and disregarded that risk "by failing to take reasonable measures to abate it."  *Arenas v.*

*Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citation omitted).

Plaintiff's vague and conclusory allegation that Defendant Carlton failed to handle

his administrative grievances pertaining to his brain tumor in a proper and timely manner

is insufficient.  Per his own administrative grievances, Defendant Carlton granted him

permission to proceed with the next administrative step when he complained of a delay.

In so doing, Carlton did not wantonly disregard or ignore Plaintiff's serious medical

needs, nor did he intentionally deny or delay his access to medical care.  An inmate's

due process rights are "not violated by the prison's failure to adhere strictly to the non-

mandatory time limits stated in its rules."  *Boatswain v. Martinez*, 519 F. App'x. 253, 254

(5th Cir. 2013).

14

**Defendants LT. Cartwright and Sgt. Franklin (Counts Two and Five)**

Plaintiff's claims against Lieutenant Cartwright and Sgt. Franklin are identical and

should also be dismissed.  Plaintiff alleges that these defendants violated his due process

rights by refusing to view the surveillance video showing that he was too incapacitated to

have committed the violation.  Because success on these claims will necessarily

invalidate his disciplinary conviction, which has not yet been overturned, they too are

*Heck*-barred.  Even if they were not, there is "at least 'some basis in fact' or a 'modicum

of evidence' to support the disciplinary conviction as noted earlier.

Plaintiff also alleges Defendants Cartwright and Franklin were deliberately

indifferent to his medical needs in violation of the Eighth Amendment by "placing him in

the SHU under inhumane conditions both with a brain tumor and immediately after

surgery for the brain tumor for both of the incident reports contained in this complaint."

It is unclear whether Plaintiff is seeking to impose vicarious liability on Lt. Cartwright

and Sgt. Franklin because of their supervisory roles or because they personally placed

him in the SHU.  But, liberally construed, the basis for his medical claim is that they

denied or interfered with his access to medical treatment by placing him in the SHU.[9]

*Gamble*, 429 U.S. at 104–05.  However, Plaintiff has not alleged specific facts that, if

proven, indicate that ***these*** Defendants knew or reasonably should have known that their

---

[9]   *See Scott v. Johnson*, 2019 WL 1983145, at *5 (C.D. Cal., 2019) ("The court does not read
the [first amended compliant] to challenge Plaintiff's placement in the SHU except to the extent that
it affected his ability to wear medically prescribed sunglasses indoors. As such,
Plaintiff's placement in the SHU constituted the means by which Johnson and Parent allegedly
interfered with his medical treatment, *i.e.*, wearing sunglasses indoors to protect his eyes after
surgery."

actions and/or omissions would interfere with his constitutional right to adequate medical care. Even assuming that placing Plaintiff in the SHU for rule violations before and after his brain surgery was sufficiently serious to form the basis of an Eighth Amendment violation, Plaintiff does not allege that Defendants Carlton and Franklin knew of any risk to Plaintiff's health and disregarded that risk. Conclusory allegations are not enough to establish an Eighth Amendment claim, and neither the first or second amended complaints cures these deficiencies.

## Conclusion

For the reasons stated herein, the undersigned recommends that the Motions to Dismiss filed by Defendants Carlton, Dean, Cartwright, and Franklin [66, 68, 72 & 74] be granted. The Complaint against them should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections to the Report and Recommendation. The objections must be filed with the Clerk of Court, and the objecting party must specifically identify the findings, conclusions, and recommendations to which he objects.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation, within 14 days after being served with a copy shall bar that party,

except upon grounds of plain error, from attacking on appeal the unobjected-to proposed

factual findings and legal conclusions accepted by the district court.  28 U.S.C. ' 636,

Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United*

*Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

     Respectfully submitted on February 11, 2020.


                                             <u>          s/ Linda R. Anderson        </u>
                                             UNITED STATES MAGISTRATE JUDGE