**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**RANDALL B. CAUSEY**                                                             **PLAINTIFF**

**V.**                                               **CIVIL ACTION NO. 3:18CV181 CWR-LRA**

**A.W. CARLTON, et al.**                                              **DEFENDANTS**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

A previous Report and Recommendation [91] was entered by the undersigned in this case on February 11, 2020, recommending that four Motions to Dismiss [66, 68, 72, & 74] be granted, and that the guards and FCC-Yazoo officials sued by Randall Causey ["Plaintiff" or "Causey"] be dismissed. A fifth Defendant, "Nurse Scott" also filed a Motion to Dismiss [76]. In support, Defendant Scott attached six exhibits, including the October 29, 2018, Declaration of Alvin Fortenberry; three others with records regarding Plaintiff's administrative remedies; selected medical records regarding Plaintiff; and, the Quarters Assignment History of Plaintiff. Because matters outside the pleadings were submitted, the undersigned will treat this as a motion for summary judgment. Having considered the submissions of the parties and the applicable law, the undersigned recommends that Nurse Scott's motion be granted and that she be dismissed with prejudice. This recommendation is based upon the following review and analysis.

**FACTUAL BACKGROUND**

Many of the facts as alleged by Plaintiff are set forth in the prior Report and Recommendation [91, pp. 2-4] and will not be repeated herein. More specific factual

allegations made by Plaintiff regarding Nurse Scott are also accurately summarized in Scott's Memorandum, [77, pp. 2-7].  Generally, as to Nurse Scott, Plaintiff charges that he went to sick call on July 19, 2016, and spoke with Nurse Scott about having severe headaches, chills, fever, vision loss, energy loss, and a loss of appetite.  She got frustrated with him and instructed him not to talk about his symptoms in front of other inmates.  He began filling out medical forms and became nauseous.  He rushed to the restroom, and Nurse Scott was waiting outside the restroom for him when he came out.  She "became belligerent" and used "derogatory and unprofessional language" because he had rushed past her to go to the restroom.  Plaintiff returned to the examination room and began explaining his symptoms.  Nurse Scott took his vital signs and became "aggressive" during this.  Plaintiff contends that he was offended at her actions, so he left the room and asked to be treated by someone else.  He was "ill and could not tolerate Nurse Scott's wanton abuse."

Nurse Scott filed an incident report alleging that Plaintiff had violated prison rules by "Threatening a Staff Member."  Plaintiff claims that this was false, but he was found guilty of the violations. [65, paragraph 41.]  Because of Nurse Scott's allegations, Plaintiff claims he was put in a small holding cell for several hours, and Nurse Scott declined to treat him.  Several hours later, he was taken back to the medical facility and seen by Dr. Chambers.  Dr. Chambers diagnosed him with food poisoning and a large brain tumor near his optic nerve.  Because of Nurse Scott's allegations against him, he was then returned to the small cell and then placed in the special housing unit ["SHU"].

Plaintiff was released from the SHU on September 9, 2016. He underwent brain surgery on December 30, 2016 and was released from ICU on January 4, 2017. He has sued Nurse Scott in her individual capacity, alleging that she violated his due process rights in regard to the July 20, 2016 report; she knew her report was false, according to Plaintiff. He also charges that she violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. She placed him in the SHU under inhumane conditions. She also violated his Eighth Amendment rights because she knew about his brain tumor from at least May 2016 but did not provide surgery until December 2016. According to Plaintiff, this delay caused multiple permanent injuries.

Defendant Nurse Scott moves to dismiss the claims against her for lack of subject-matter jurisdiction and for failure to state a claim. She asserts that the Complaint does not allege sufficient facts to show her personal involvement in any alleged constitutional violation to overcome a qualified immunity defense; she has no supervisory liability. According to her, the allegations, accepted as true, are either unexhausted; do not constitute a violation of the Eighth Amendment; or, are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny. Nurse Scott attached selected medical records as Attachment 5 to her motion [76-5]. She requests that this portion of her motion be converted to a Motion for Summary Judgment to the extent this Court relies upon any evidence outside the pleadings. [77, p. 28, ft. 16].

## Standard of Review

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate

the claim. *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A Rule 12(b)(6) motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1137 (5th Cir.1992). "To avoid dismissal, a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lott v. Edenfield*, 542 F. App'x. 311, 314 (5th Cir. 2013) (internal citations and quotations marks omitted). If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

## Discussion

1. ***Alleged Due Process Violations***

As discussed in the prior Report and Recommendation, [91, pp. 5-7], *Bivens* has never been extended to due process violations arising from disciplinary convictions. *Carlson v. Green*, 446 U.S. 14, 19 (1980). Nurse Scott's incident report against Plaintiff, and the resulting disciplinary action, cannot be re-litigated in this cause on Plaintiff's contentions that she violated his Due Process rights. She made the allegation, and Plaintiff received a hearing and an opportunity to be heard. Whether her claim was actually false is now irrelevant and not a material fact to be determined herein. The administrative and statutory remedies provided alternative methods for judicial relief to Causey, and this Court should decline to extend a *Bivens* remedy to Causey's due process

4

claims here.  Even if there were no such remedies, Plaintiff's due process claims against Nurse Scott are barred under *Heck v. Humphrey*.  Causey's conviction which resulted from Nurse Scott's complaint has not been reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus.   As previously discussed regarding the claims against the guards, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been [overturned]."  *Heck*, 512 U.S. at 486–87; *Stephenson v. Reno*, 28 F.3d 26, 28 (5th Cir. 1994) (per curiam) (applying *Heck* in *Bivens* context).  *See Deen-Mitchell v. Young*, 490 F. App'x 650, 650–51 (5th Cir. 2012) (per curiam) (assuming "arguendo that federal prisoners have a liberty interest in their good-time credits").

Even if Due Process attached in Causey's case, Due Process is satisfied if there is "at least 'some basis in fact' or a 'modicum of evidence' to support the disciplinary conviction.'" *Superintendent, Massachusetts Corr. Inst. v. Hill,* 472 U.S. 445, 454–56, (1985).  There is some evidence in the record to support the disciplinary conviction, including the incident report.[1]  Nurse Scott's version of the events, as set forth in the incident report, was as follows:

---

[1] Plaintiff asserts that Defendant Scott's incident report was false and that his signature was forged on the incident report to make it appear that he had waived his right to call witnesses at his disciplinary hearing.  He has not provided any information to reflect the nature of the testimony that the witnesses he was not allowed to call would have presented.  The administrative record reflects that Plaintiff did not request a staff representative. ECF No. 31-4, pp. 9, 17.

5

> On July 19, 2016, at approximately 0715am, inmate Causey, Randall Reg No: 10672-027, reported to sick call for an evaluation for his complaints of feeling sick. I requested that inmate Causey sit on the hospital bed to further evaluate his complaints and to obtain his vital signs. Inmate demanded that I start intravenous fluids on him and stated, "I'm losing electrolytes, start IV fluids on me." I informed Inmate Causey I needed to get his vital signs first. He became enraged, standing up, yelling "woman I'm sick", waving and flapping his arms about in the air. I instructed inmate Causey to sit back down on the bed. Inmate Causey ignored my directives and began to yell and scream "Woman, I need some fluids", and Inmate Causey removed the blood pressure cuff from his arm I had applied to obtain his vital signs, and continued to yell loudly while moving towards me stating "I'm sick, start an IV." I directed Inmate Causey to step back and to sit back down on the bed. He refused by continuously walking towards me, in my space, with both arms raised above my head, with both his hands clinched tightly forming a closed fist. I stepped backwards while giving directives for inmate Causey to sit down and to stop yelling. He continued to do so while shaking his clinched hands above his head and mine. I was fearful that inmate Causey was ready to strike me. I was fearful of being assaulted by inmate Causey because of his aggressive behavior and refusal to follow my directives. I activated my Body Alarm for assistance.

[76-4, p. 5].

Nurse Scott's testimony regarding the July 19th episode is sufficient to support Causey's conviction, and this Court cannot relitigate the finding of the prison disciplinary officials in this civil case. No Due Process violation has been stated.

### 2. *Official Capacity Claims*

Assuming arguendo a *Bivens* remedy extends to Plaintiff's Eighth Amendment claims in this case, the purpose of a *Bivens* action "is to deter individual federal officers from committing constitutional violations." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Accordingly, it may only be maintained against a defendant in his or her individual capacity. *Id.* To the extent Plaintiff is attempting to assert a *Bivens* claim against Nurse Scott in her official capacity, the Court should dismiss the claims for lack of subject matter jurisdiction. *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x. 549, 551

6

(5th Cir. 2004) (affirming dismissal of *Bivens* claims against the BOP and BOP officers in their official capacities).

### 3. *No respondeat superior liability*

Although *Bivens* claims may proceed against officers in their individual capacities, a governmental official "is only liable for his or her own misconduct." *Ashcroft v. Iqpal*, 556 U.S. 662, 677 (2009). Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior. A plaintiff must plead that each government-official defendant, through the official's own individual actions, violated his constitutional rights by (1) "personal involvement in the acts causing the deprivation of a person's constitutional rights" or by (2) implementing "a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Accordingly, Nurse Scott cannot be found liable for the actions of others.

### 4. *Qualified Immunity*

The sufficiency of a plaintiff's allegations in a *Bivens* action is also "inextricably intertwined with" and "directly implicated by" an official's qualified immunity. *Iqbal,* 556 U.S. at 673. "A federal official is entitled to qualified immunity unless the allegations in the complaint establish a violation of a constitutional right that was clearly established at the time of the alleged misconduct." *Edenfield*, 542 F. App'x. 311, 314–15 (citation omitted). Once the qualified immunity defense is raised, the burden shifts to the plaintiff, who "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and

7

that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Nurse Scott does not contest that it is clearly established law: deliberate indifference to a prisoner's serious medical needs constitutes an actionable Eighth Amendment violation under §1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). However, delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, *which results in substantial harm. Id. Hall v. Thomas*, 190 F.3d 693 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993), citing *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (delay must constitute "deliberate indifference"). Nurse Scott maintains that Plaintiff fails to allege sufficient facts to show her personal involvement in an Eighth Amendment or any other constitutional violation to overcome her qualified immunity defense.

The undersigned has reviewed Causey's pleadings and notes that his main claims against Nurse Scott involve her filing the incident report regarding his behavior on July 19, 2016. The administrative remedy file regarding that incident was submitted by Defendant [76-3] in support of her motion. Assuming that the incident delayed Causey's treatment, the delay was no more than 10 hours. Apparently Causey was not seen by Dr. Chambers "until he apologized." And, Causey does not claim that Nurse Scott requested that action. The delay from that medical appointment in July 2016 until Plaintiff underwent surgery in December 2016 did not involve Nurse Scott, and Causey does not charge in his Complaint or Amended Complaint that Nurse Scott had anything to do with

8

the surgical delay. In fact, he filed a request for administrative remedy in August 2016 requesting a consultation with a neurologist; that he be allowed to have surgery; and, that he be moved to a proper medical level health care facility. He does not charge that Nurse Causey had any part in the decision not to give him a neurological consultation or not to move him or allow him to have surgery for his brain tumor. [See 76-3].

Plaintiff contends that Nurse Scott knew about his tumor from at least May of 2016 or February of 2016 but she did not "provide surgery until December of 2016." [65, p. 11]. As pointed out above, Plaintiff did not include Nurse Scott when he filed his administrative remedy asking for a medical transfer. This fact confirms that he is aware that a nurse at the prison does not control whether and when he will undergo brain surgery. The medical records submitted in support of Nurse Scott's motion [76-5] confirm that an MRI was performed on Causey on May 3, 2016. Dr. Chambers diagnosed Plaintiff on July 19, 2016, with a "pituitary macroadenoma." [76-5, p. 3.] A targeted neurosurgery consultation was scheduled for August 2, 2016, according to the records. *Id.* The medical records do not reflect that Nurse Scott was involved in Plaintiff's brain tumor diagnosis or in his treatment--- Dr. Chambers was the physician involved in the treatment on July 19, 2016, and the nurse involved was an RN named "J. Johnson." *Id*. at 8. There is no evidence presented that Nurse Scott examined Plaintiff after the incident on that date or even knew about his brain tumor diagnosis or had any authority to obtain a neurological consult or surgery on Plaintiff's behalf. Even if she knew about the brain tumor on July 19, Plaintiff does not contend that he faced a risk of serious harm from the tumor on that date. He does not contend that the tumor was

malignant or growing or causing irreversible damage if left untreated. Nurse Scott was entitled to rely on Dr. Chambers to determine the course of treatment for Plaintiff.

If Nurse Scott did cause a day's delay in Plaintiff receiving his diagnosis and physician examination due to the incident on July 19, 2016, the delay in diagnosis was no more than 7-8 hours, by Plaintiff's own assertions.

The burden of showing deliberate indifference is a high one, and difficult to meet. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Mere negligence cannot support a claim of deliberate indifference; nor can a prisoner's disagreement with his treatment support a constitutional claim. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). The Fifth Circuit has announced that "[d]eliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991). Even if Nurse Scott caused a short delay in Plaintiff being treated on July 19, 2016, there is no evidence that she even knew about Plaintiff's diagnosis or was responsible for his treatment and surgery thereafter. She certainly cannot be found to have been aware of the facts regarding the brain tumor, or that Plaintiff was at risk of serious harm.

Even if Defendant Scott was aware of Plaintiff's tumor and that he was at risk of serious harm, her actions or inactions at the July 19, 2016, exam could only be considered

10

negligent. Plaintiff complains that Nurse Scott was frustrated, aggressive, belligerent, disrespectful, and unprofessional. None of these could form the basis of liability in a *Bivens* action. Rudeness is not actionable, and it certainly does not rise above a finding of mere negligence. When medical personnel do not perform the treatments requested by the patients, no liability can attach unless the deliberate indifference prongs are met. A *Bivens* complaint is not a medical malpractice case wherein negligence may give rise to liability. Plaintiff also confirms that he was the one who decided to end the evaluation when Nurse Scott was not doing what he wanted. [65, paragraphs 11 & 12]. Nurse Scott's behavior, no matter how offensive to Plaintiff, cannot establish an Eighth Amendment violation under the circumstances alleged by Causey. She is entitled to qualified immunity on the Eighth Amendment claim based upon the medical care provided Causey by BOP.

     Causey also contends that Nurse Scott caused him to be sent to the SHU and that the conditions of the SHU aggravated his medical problems. However, Nurse Scott merely filed the initial incident report. As a medical official, she was not responsible thereafter for the disciplinary proceedings or Plaintiff's punishment. She had no role in determining that he would be placed in SHU as a part of the disciplinary process. Nor is she responsible for Plaintiff's conditions of confinements in the SHU. Drawing all reasonable inferences in favor of Plaintiff, Causey has failed to allege sufficient facts to overcome Defendant Scott's qualified immunity defense on these issues.

### 5. *Non-exhausted claims*

Defendant Scott contends that the allegations against her regarding Plaintiff being placed in the SHU under "inhumane conditions" are non-exhausted, as neither of Causey's administrative grievances[2] explicitly mentions that Scott placed Plaintiff in the SHU improperly or that the conditions in the SHU were constitutionally inadequate. It is well-settled that a "grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). Although Plaintiff did complain about the care he received in the SHU, his grievance focuses on his transfer request and on his request to be treated by a neurologist. He does not charge that Nurse Scott had anything to do with these complaints.

The applicable section of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

---

[2] As discussed, BOP's administrative records reflect that Plaintiff exhausted two Administrative Remedy Claims before filing the instant suit. Administrative Remedy 873799, filed on August 8, 2016, relates to Plaintiff's request for a medical transfer because the prison's medical staff were not caring appropriately for his medical conditions. Relatedly, it also challenges the timeliness and lack of response from prison and medical officials to his administrative requests. Administrative Remedy 878265, appeals Plaintiff's disciplinary conviction of August 4, 2016, for Threatening Bodily Harm disciplinary hearing and decision imposed by Disciplinary Hearing Officer arising from Defendant Nurse Scott's incident report and challenges the underlying basis for his placement in the SHU. As relief, Plaintiff requested that his record be expunged.

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA governs Causey's claims. Accordingly, he was required to properly complete the administrative remedy process in its entirety before filing this suit. Because he failed to do so regarding these claims against Nurse Scott, these contentions should be dismissed on this basis. *See Porter v. Nussle*, 534 U.S. 516, 520 (2002); *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016) (exhaustion is mandatory and courts cannot excuse it).

## *Conclusion*

For the reasons stated herein, the undersigned recommends that the Motion to Dismiss filed by Defendant Nurse Scott [76] be granted. The Complaint against her should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections to the Report and Recommendation. The objections must be filed with the Clerk of Court, and the objecting party must specifically identify the findings, conclusions, and recommendations to which he objects.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation, within 14 days after being served with a copy shall bar that party,

except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. ' 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    Respectfully submitted on February 20, 2020.

_____s/ Linda R. Anderson_____  
UNITED STATES MAGISTRATE JUDGE
